IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOANNE D. JOHNSON,**

      **Plaintiff,**

vs.                                                     **NO.  CV 04-0149 RB/WDS**

**COOPER'S INC.,**
**a New Mexico corporation,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**I. Introduction.**

      **THIS MATTER** comes before the Court on Defendant Cooper's Incorporated's ("Cooper's") motion for summary judgment with respect to Plaintiff Joanne Johnson's ("Ms. Johnson") Title VII retaliation claim.  For the reasons that follow, I DENY Cooper's motion for summary judgment.

**II. Background and procedural history.**

      Cooper's operates a chain of retail clothing stores known as "Western Warehouse." (Amend. Compl. ¶ 11.)  Ms. Johnson worked as a Controller from June 4, 2001 until September 8, 2003, when she was terminated.  (Amend. Compl. ¶ 12; Def.'s Mot. for Summ. J. at 1.)  She was part of the senior management team, headed the finance department, and was responsible for accounting and financial management for Cooper's.  (Amend. Compl. ¶ 12; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1.)  In April 2003, Cooper's placed Ms. Johnson on the hiring committee for a new regional manager position.  (Amend. Compl. ¶ 13.)  The committee interviewed three applicants and

recommended a female, Lori Smith, for the position. (Amend. Compl. ¶ 13, 14.) Carrie McDermott, Cooper's CEO, and other members of the senior management team, wanted to hire a male applicant. (Amend. Compl. ¶ 14.) In May 2003, Cooper's hired the male applicant, Carlos Gomez, as its new Regional Manager. (Amend. Compl. ¶ 16.)

Ms. Johnson's retaliation claim stems from conversations she had with Carrie McDermott ("Ms. McDermott") between May 2003 and September 8, 2003. (Amend. Compl. ¶ 6.) Ms. Johnson asked Ms. McDermott in May and July of 2003 why Cooper's hired the male applicant instead of the female applicant, whom the hiring committee recommended. (Amend. Compl. ¶ 15, 17; Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1.) On both occasions, Ms. Johnson argued that: "We need to hire based on the best candidate . . . ." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1.) Ms. McDermott responded to Ms. Johnson by saying that the Board felt that there were "too many women in senior management" and wanted to hire a male. *Id.*

Cooper's offered Ms. Johnson a severance package on August 18, 2003, which she rejected. On September 8, 2003, Cooper's sent her a letter of termination, which stated that "we discussed the possibility that Cooper's needed a Chief Financial Officer (CFO) who could operate at a higher level of strategic planning and oversight than you had been providing as Controller . . . you did not exhibit the skills and leadership needed for the CFO position." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 5.) The letter listed several specific instances where Ms. Johnson failed to exhibit leadership skills. *Id.*

Ms. Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") under the New Mexico Human Rights Division on September 30, 2003. (Amend. Compl. ¶ 7a.) The EEOC issued a letter of non-determination and right to sue on January

21, 2004. (Amend. Compl. ¶ 6.) Ms. Johnson subsequently initiated this action on February 11, 2004.

**III. Analysis.**

    **A. Standard of review.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Tenth Circuit has held that: "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (*quoting* FED. R. CIV. P. 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

    **B. Retaliatory discharge under Title VII.**

In order to make a prima facie case under Title VII, Ms. Johnson must show that 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. *O'neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). Because Cooper's concedes that terminating Ms. Johnson constitutes an adverse employment action, the analysis focuses on whether she engaged in protected activity and whether a causal link existed between the protected activity and the adverse employment action..

First, Ms. Johnson engaged in a protected activity. After Cooper's hired a male regional manager, Ms. Johnson told Cooper's CEO, Ms. McDermott, that Cooper's hiring decision was

"wrong" and that "[w]e need to hire based on the best candidate . . . ." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1.) Cooper's CEO responded that the Board wanted to hire a male. *Id.* Viewing the facts in the light most favorable to Ms. Johnson, she opposed a discriminatory hiring practice, that is, hiring on the basis of gender, and thereby engaged in a protected activity.

Second, a causal connection existed between Ms. Johnson's protesting Cooper's hiring decision and her termination. Ms. Johnson received either an "E" (effective) or "VG" (very good) in nearly every category of her 2003 job evaluation. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 4.) Yet approximately one month after her July 2003 conversation with Ms. McDermott, Cooper's offered her a severance package, which she rejected. Less than a month after rejecting the severance package, Cooper's terminated her. Viewing the facts in the light most favorable to Ms. Johnson, there is at least a factual issue as to the connection between her disputing Cooper's hiring of a male regional manager and her termination.

After Ms. Johnson makes a prima facie case, the burden then shifts to the defendant to proffer legitimate reasons for Ms. Johnson's termination. *O'neal*, 237 F.3d at 1252 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Cooper's contends that it terminated Ms. Johnson because her Controller position was eliminated and because she was performing poorly. In support of this contention, Cooper's notes that even before Ms. Johnson's conversations with Ms. McDermott she received an "RI" (requires improvement) under the "Leadership" category of her job evaluation. (Def.'s Brief in support of Mot. for Summ. J., Ex. 6.) Ms. Johnson missed more than one required meeting at a work retreat in January 2003 and even resigned in February 2002. (Def.'s Brief in Supp. of Mot. for Summ. J., Ex. B.)

In addition, Ms. McDermott told Ms. Johnson that Cooper's needed to create a CFO position

4

and could not afford to have both a Controller and a CFO given the financial losses the company had sustained. *Id.* She also informed Ms. Johnson that she did not believe Ms. Johnson possessed the necessary leadership skills to fill the CFO position. *Id.* Finally, Cooper's notes that Ms. McDermott and Ms. Johnson had recurring conversations about Ms. Johnson's poor performance, lack of cooperation with co-workers, and lack of leadership ability before and after their conversations in the summer of 2003. *Id.* Cooper's contends that Ms. Johnson was fired because of her poor employment record, not her complaints regarding Cooper's hiring of a male regional manager. Cooper's, therefore, offered legitimate reasons for terminating Ms. Johnson.

The burden then shifts to Ms. Johnson to show that Cooper's proffered reasons were a pretext for terminating her. *O'neal*, 237 F.3d at 1252 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Ms. Johnson can demonstrate pretext by "showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003). Ms. Johnson notes that although she received an "RI" (requires improvement) on one job evaluation her overall rating on that evaluation was still an "E" (effective). (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 4.) Moreover, she argues that she resigned in February 2002 because of differences between her and Ms. McDermott over how Ms. Johnson should effectively do her job. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1.) Ms. Johnson notes that Cooper's subsequently asked Ms. Johnson to reconsider her resignation and return to work because she was a valued employee. *Id.* Ms. Johnson also points out that although the termination letter indicated that Ms. Johnson had performed poorly in the areas of financial reporting, projections, and cost control, Ms. McDermott's own employee evaluation notes indicated that Ms. Johnson was a "very good reporter of data and information." *Id.* According

5

to Ms. Johnson, this shows that her complaints about Cooper's hiring based on gender more likely motivated Cooper's decision to terminate her than her allegedly poor work performance. Viewed in the light most favorable to Ms. Johnson, there is a genuine issue of fact regarding whether the reasons offered by Cooper's were a pretext for terminating Ms. Johnson.

## IV. Conclusion.

Enough genuine issues of fact exist for Ms. Johnson to survive Cooper's motion for summary judgment on her Title VII retaliation claim. **THEREFORE**, Cooper's motion for summary judgment is hereby **DENIED.**

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**